**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **AUDIE LANE JAMESON,** § | |
| *Plaintiff,* § | |
| § | |
| v. § | **MO:24-CV-00139-DC-RCG** |
| § | |
| **VICTOR CHINIKIDIADI,** § | |
| *Defendant*. § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Victor Chinikidiadi's Motion to Dismiss. (Doc. 7).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the Parties' briefs and the case law, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **DENIED**. *Id*.

### I. BACKGROUND

On June 12, 2024, Plaintiff Audie Lane Jameson ("Plaintiff") filed his Original Complaint against Lythix, LLC ("Lythix") and Defendant Victor Chinikidiadi ("Defendant"). (Doc. 1). Following a Motion to Dismiss for Lack of Jurisdiction, Plaintiff amended his Complaint. (*See* Docs. 3, 5). Plaintiff's Amended Complaint dismissed Lythix as a party, leaving only Defendant in the suit. (Doc. 5). Plaintiff asserts one cause of action for tortious interference with an existing contract. *Id*.

Plaintiff's relevant factual allegations are as follows. In March 2017, Plaintiff, Toni Jameson ("Toni"), and Rob Morris of PetroGardian (a Louisiana LLC) started Lythix. *Id*. at 2. Plaintiff and Toni were married at the time. *Id*. Four years later, Rick Sosa ("Sosa") of Fusion

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

Industries bought out Rob Morris, and Sosa was named managing member of Lythix. *Id*. In October 2022, Sosa was bought out of the company and replaced with Yellow Cardigan Investments, LLC ("Yellow Cardigan"). *Id*. Yellow Cardigan is a 50% member of Lythix, and Defendant is a member of Yellow Cardigan. *Id*. When Sosa was bought out, Toni became the managing member, and she is the sole manager of Lythix. *Id*. Around the same time, Plaintiff entered into an employment agreement ("Services Agreement") with Lythix to be Vice President of the company. *Id*. Relevant here, the Services Agreement laid out the ways in which Lythix could terminate Plaintiff. *Id*. at 2–3. Specifically, the Services Agreement states termination could be done voluntarily by Plaintiff for good reason, by agreement between the parties, or by Lythix with cause and providing written notice to Plaintiff. *Id*.

At the time the Services Agreement was entered into, Plaintiff and Toni were going through a separation. *Id*. at 3. Plaintiff and Toni agreed Plaintiff would work remotely, while continuing to fulfill the terms of his employment. *Id*. On April 13, 2022, Defendant asked if Plaintiff would meet with himself and Lythix human resource personnel ("HR"), "in a mediation of sorts," to discuss Plaintiff's role moving forward. *Id*. at 4. Four days later, Plaintiff, Defendant, and Lythix HR met. *Id*. Defendant asked Plaintiff to provide the details of what it would take for him to resign and leave Lythix; Plaintiff did so. *Id*. Plaintiff never discussed terminating his Services Agreement or selling his interest in Lythix with Toni. *Id*. On June 6, 2023, Defendant called Plaintiff and "gave him an artificial deadline to leave the company by June 8, 2023." *Id*. Plaintiff found this "odd," he did not respond, and he continued to do his job. *Id*. On June 13, 2023, Toni asked Plaintiff to help with Lythix software access and retrieving a terminated employee's credentials, giving Plaintiff "no reason to believe he had been terminated." *Id*.

The next day, Plaintiff was locked out of his company email and the software programs necessary to do his job. *Id*. Plaintiff had not resigned and was not given any notice that he had been terminated, so he continued to work to the best of his abilities. *Id*. at 5–6. On June 16, 2023, Plaintiff received a letter from his life insurance company stating his policy through Lythix had been cancelled due to termination. *Id*. at 5. Further, Plaintiff was notified by his doctor that his shoulder surgery scheduled for later that month had been cancelled because his health insurance through Lythix was cancelled. *Id*. When Plaintiff's June monthly salary did not post in his bank account, he contacted Lythix HR. *Id*. Plaintiff was told he needed to contact Defendant because "he made the decision to terminate him." *Id*. On June 23, 2023, counsel for Yellow Cardigan—claiming to represent Lythix—stated Plaintiff was given "constructive notice" of his termination by Defendant and Toni because they had talked about it multiple times. *Id*. at 6.

On October 7, 2024, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). (Doc. 7). The instant matter is fully briefed and ripe for disposition.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a

3

demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In a court's review of a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

### III.   DISCUSSION

As this Court sits in diversity, it applies Texas law to determine the sufficiency of the Complaint. "[A] party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach

the contract." *Holloway v. Skinner*, 898 S.W.2d 793, 794 (Tex. 1995). In Texas, to prove tortious interference with a contract, a plaintiff must show "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). Defendant appears to only take issue with the second element, arguing he could not have tortiously interfered with Plaintiff's contract because he was an agent of Lythix and not a stranger to the contract. (*See* Doc. 7).

To show willful and intentional interference with a contract, Plaintiff must first show that Defendant was legally capable of interfering. *Hansen*, 525 S.W.3d at 690. As a general premise, a party cannot tortiously interfere with its own contract. *Holloway*, 898 S.W.2d at 796. Texas law requires "a person must be a stranger to a contract to tortiously interfere with it, hence, a contracting party's agent or employee acting in the party's interests cannot interfere with the party's contract." *Morgan Stanley & Co. v. Tex. Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997). Thus, the general rule is that a contracting party's agent cannot tortiously interfere with the party's contract. *Hansen*, 525 S.W.3d at 690. A corporation's agent may still be liable for tortiously interfering with the corporation's contract if the plaintiff can show "that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests" and thus, he "could not have been acting within the scope of his agency at the time of the interference." *Id*. at 691; *Holloway*, 898 S.W.2d at 796.

The threshold issue before the Court is whether Defendant was an agent of Lythix at the time of his alleged interference. In his Complaint, Plaintiff clearly states Defendant was not a member, manager, officer, employee, or representative of Lythix; he had no managerial or

5

operational role in the company; he had no authority to terminate employees or speak on behalf of Lythix; and he was not an agent of Lythix. (Doc. 5 at 4–7). Instead, Plaintiff contends Defendant was simply an interest holder through Yellow Cardigan, and he made fraudulent representations to Lythix HR to stop Plaintiff's pay and benefits. *Id.* at 6–7. In contrast, Defendant asserts the facts in the Complaint demonstrate Defendant acted as an agent of Lythix; thus, he is not a stranger to the contract. (Doc. 7 at 5). Defendant provides several facts he believes show he was Lynthix's agent: (1) meeting with Plaintiff regarding the terms and conditions of separating from Lythix; (2) giving Plaintiff a deadline to resign from Lythix; (3) terminating Plaintiff; and (4) HR directing Plaintiff to speak with him to understand the reason for his termination. *Id.* at 5. Reading the facts in the light most favorable to Plaintiff, the Court finds Plaintiff sufficiently pleaded Defendant was not an agent of Lythix.

Defendant asks the Court to conclude from the facts that Plaintiff knew Defendant was an agent of Lythix. However, Plaintiff provides—based on his personal knowledge as an executive and founding member of Lythix—Defendant had no authority to speak or act on behalf of Lythix. At the motion to dismiss stage, the Court must accept Plaintiff's well-pleaded facts as true. *Iqbal*, 556 U.S. at 678. Whether an agency relationship exists is generally a question of fact. *Del Carmen Flores v. Summit Hotel Grp.*, 492 F. Supp. 2d 640, 644 (W.D. Tex. 2006). The exact nature of the relationship between Lythix and Defendant is best left for a later stage of the litigation. For now, Plaintiff has sufficiently pleaded Defendant was a stranger to the contract; thus, he was legally capable of tortiously interfering with the contract.

## IV. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** Defendant's Motion to Dismiss be **DENIED**. (Doc. 7).

SIGNED this 21st day of March, 2025.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).